UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHANIEL WARD,

    Plaintiff,                                        Civil Action No. 2:12-14875

v.                                                 District Judge George Caram Steeh
                                                      Mag. Judge Laurie J. Michelson

JIM LUCKEY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT**
**DEFENDANT LUCKEY'S MOTION FOR SUMMARY JUDGMENT [16]**

    Plaintiff Nathaniel Ward claims that Defendant Jim Luckey, the prison law librarian where he is housed, engaged in conduct prohibited by the Constitution, including filing a misconduct charge in retaliation for Ward's exercise of his First Amendment right to grieve the librarian. (*See* Dkt. 1, Compl. at Pg ID 20-23.) Defendant Luckey moves to dismiss Plaintiff's complaint because Ward did not, prior to filing this suit, exhaust administrative remedies that the Michigan Department of Corrections made available to him. (Dkt. 16, Def.'s Mot. Summ. J.) The Court agrees, but not for the exact reasons argued by Defendant. For the following reasons, the Court RECOMMENDS that "Defendant Luckey's Motion for Dismissal, or in the Alternative, for Summary Judgment" (Dkt. 16)[1] be GRANTED and that Ward's complaint be DISMISSED WITHOUT PREJUDICE. This

---

[1] It would aid the Court if counsel was less indecisive as to the proper procedural tool in future motions. Gratuitous use of "and/or" ignores significant differences between Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56. Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint: the defendant asserts that the plaintiff's allegations, even when accepted as true, fail to state a cognizable claim for relief. Rule 56, on the other hand, is a test of proof: the moving party must show that the evidentiary record is such that no material facts are in genuine dispute, and that no reasonable jury could find for the non-moving party. In future motions, counsel should make a case-

Court further RECOMMENDS that, if this report and recommendation is adopted, any other pending motions be DENIED AS MOOT.

**I.**

Where, as here, a defendant moves for summary judgment, this Court "construe[s] the evidence," and "draw[s] all reasonable inferences" from the evidence, in favor of the plaintiff. *See Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012). Luckey's motion is based on exhaustion, and so Luckey has not contested Ward's factual account. The following, therefore, is based on Ward's allegations.

In July and August 2012, Ward was imprisoned at the Michigan Department of Corrections' ("MDOC") Jackson Cooper Street facility ("JCS"). (*See* Dkt. 1, Compl. at Pg ID 20.) On July 6, the librarian at JCS, Jim Luckey, issued a call out for Ward to use the law library at 8:30. (Compl. at Pg ID 8.) Ward, however, had not requested to use the library at that time and told Luckey that he was "enjoying [his] yard privilege" and that, if he had not signed up for law library at that time, he "should not be made to come to that call out at that time." (*Id.*)

That same day, apparently upset about being called to use the law library at a time he did not request, Ward filed a grievance, JCS 2012 07 0647 14c ("JCS 0647"), against Luckey. (Compl. at Pg ID 8.) This grievance was resolved on August 1, 2012: "Luckey agreed to put [Ward] on law

---

specific inquiry as to whether a non-exhaustion motion should be brought pursuant to Rule 12(b)(6) or Rule 56. *See Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) ("A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit is an affirmative defense under the PLRA[.] . . . [I]nmates are not required to specially plead or demonstrate exhaustion in their complaints." (internal citation and quotation marks omitted, alteration in original)); *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract.").

library for the time he requested." (Dkt. 18, Pl.'s Resp. to Def.'s Mot. Summ. J. at 7; *see also* Compl. at Pg ID 8.)

It appears that Ward and Luckey had no further conflicts until August 17, 2012. Ward had requested a law library call out, and it was scheduled for 1:00 to 3:00 p.m. that day. (Compl. at Pg ID 9.) Due to the unit's restricted movement during its visit to the JCS "store," however, Ward's unit had to go to "chow" later than originally planned. (*Id.*) This resulted in Ward arriving late to his library call out—at 1:30 p.m. (*Id.*) Upon arrival, Ward says that "staff member Flynn" told him to "hold-on." (*Id.*) Flynn informed that Luckey had instructed Flynn to bar Ward from the library "because [Ward] [was] late." (*Id.*) Upon hearing this, Ward asked Flynn if he could call Luckey to inform as follows: "my unit was called for chow at the same time of my law library call-out and . . . I didn't go to early chow because I had to get store[,] and when staff are running store . . . there is restricted movement." (*Id.*) Flynn complied with Ward's request, but Luckey maintained his position that Flynn should not let Ward into the library. (Compl. at Pg ID 10). Ward says that this was despite having an hour of time left on his library call out. (*Id.*)

Following this incident, Ward and Luckey filed complaints against one another. Ward filed a grievance against Luckey, JCS 2012 08 0835 14a1 ("JCS 0835"), asserting that Luckey wrongly denied him access to the library. (*Id.*) Luckey filed a "Class II" misconduct report against Ward. (Compl. at Pg ID 5.) In his report, Luckey says,

> Prisoner Ward requested Law Library access for Friday August 17th 2012. He was scheduled from 1300 to 1500 per his request. This afternoon he was a no show. At 1330 hours I called the housing unit and checked with c/o Baines who reported, even with store, prisoner

3

> Ward had no excuse for missing his callout. Soon after, 1330, C/O Flynn reported prisoner Ward showed up at 1330 and was turned away, 30 minutes late for his callout.

(*Id.*)

Sometime in late August 2012, perhaps August 23, a hearing officer found that Ward was not guilty of misconduct as Luckey had asserted. (Compl. at Pg ID 6.) The hearing officer's report provides that, at his interview, "Officer Baynes reported that he did have the J-Unit locked down and their rotation for chow was skipped due to store lines running in the unit. Officer Baynes authorized Prisoner Ward to be late for his call out due [to] the store running and the fact that Prisoner Ward had not had an opportunity to receive a lunch meal." (*Id.*)

It appears that Ward first learned of the hearing officer's decision on August 29, 2012, when he was given a copy of the hearing officer's report. (*See* Pl.'s Resp. to Def.'s Mot. Summ. J. at 15.) The next day, Ward again grieved Luckey. (*Id.*) Ward claimed that Luckey had lied about what he discussed with Baynes, "falsified documents" (apparently referring to the misconduct charge), and retaliated because of the July 2012 grievance that Ward had filed against Luckey. (*Id.* at 15-16.) Ward also asserted that Luckey had slandered him by telling other officers that Ward was "manipulati[ve] and deceptive." (*Id.* at 16.) This grievance was received by the JCS grievance coordinator on September 6, 2012, and designated JCS 2012 09 0891 27a. (*Id.* at 15.) As will be discussed, it is this grievance that Ward primarily relies on to rebut Luckey's claim that Ward did not administratively exhaust the claims in this suit.

**II.**

Luckey's sole summary-judgment argument is that this Court should dismiss Ward's complaint because Ward did not, as the Prison Litigation Reform Act requires, administratively exhaust the claims he raises in this suit. (*See generally* Def.'s Mot. Summ. J.)

Exhaustion is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). As such, Luckey has both the burden of production and persuasion on the issue of non-exhaustion. *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012). This means that Luckey cannot simply show that it is more likely than not that Ward did not exhaust. Rather, Luckey's burden is akin to Ward's if Ward had moved for summary judgment on one of his claims: it must be such that, given the summary-judgment record, no reasonable jury could find that Ward had exhausted prior to filing this suit. *Surles*, 678 F.3d at 455-56 ("In cases where the party moving for summary judgment also bears the burden of persuasion at trial, the party's initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." (internal quotation marks and citation omitted)); *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (explaining that where the moving party on summary judgment has the burden of production and persuasion, the moving party "must . . . surpass[]" "a substantially higher hurdle" than a preponderance of the evidence); *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) ("[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.").

The only case-specific evidence Luckey offers is a grievance tracking database printout

titled "MDOC Prisoner Step III Grievance Report" ("Database Report"). (Def.'s Mot. For Dismissal or Summ. J., Ex. B.) Unlike other summary judgment motions asserting non-exhaustion that this Court has resolved, *e.g.*, *Coleman v. Gullet*, No. 12-10099, 2012 WL 5986779 (E.D. Mich. Sept. 4, 2012) (Michelson, M.J.), *report and recommendation adopted*, 2012 WL 5986679 (E.D. Mich. Nov. 29, 2012) (Goldsmith, J.), Luckey's summary judgment evidence does not include an accompanying affidavit. A supporting affidavit does more than authenticate the Database Report: it is critical evidence that the Report includes every one of Ward's Step III grievances received by the Grievance and Appeals Section in Lansing. Thus in some cases, a Database Report, standing alone, will not be evidence of non-exhaustion that "no reasonable jury would be free to disbelieve." *Surles*, 678 F.3d at 455-56 (internal quotation marks and citation omitted).

### III.

But, in this case, the Database Report is not the entirety of the summary judgment record on the issue of exhaustion. In fact, Ward does not claim that he exhausted the grievances in the Report before he filed suit.[2] Instead, he relies on another grievance, JCS 2012 09 0891 27a ("JCS 0891").

---

[2]No reasonable jury could find that the grievances in the Database Report both involved the claims raised in this suit and were exhausted before Ward filed his complaint. The Database Report shows only two exhausted grievances. One, LRF 2009 05 0911 02a, was a grievance exhausted in 2009—almost three years before the events at issue. That grievance, therefore, cannot have involved the claims Ward brought here. The other exhausted grievance, JCS 2012 07 0643 17e, may have grieved the conduct here alleged, but the Court cannot make this determination because Luckey has not made that grievance part of the record. While this suggests a genuine fact issue, the problem for Ward is that even if he has exhausted JCS 2012 07 0643 17e, he did not do so before filing this suit. (*Compare* Def.'s Mot. Summ. J., Ex. B, Database Report (providing Step III response mailing date of February 2013), *with* Compl. at Pg ID 4 (indicating that complaint was executed October 2012).) It is black-letter law that a prisoner cannot exhaust the claims in the complaint-as-filed during the pendency of the litigation. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("The plain language of the [Prison Litigation Reform Act] makes exhaustion a precondition to filing an action in federal court . . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."); *accord Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *see*

6

(*See* Pl.'s Resp. to Def.'s Mot. Summ. J. at 4, 8 (Pg ID 134, 138).) As noted, this was the grievance that Ward filed after he received the hearing officer's report on Luckey's misconduct charge. Briefly, JCS 0891 grieved that Luckey "[lied] about what was discussed with Officer Baynes," "falsif[i]ed documents," and retaliated against Ward because Ward filed the July 2012 grievance about the incorrect call-out time. (Pl.'s Resp. to Def.'s Mot. Summ. J. at 15-16 (Pg ID 145-46).) Believing that Ward's grievance challenged the adjudication of Luckey's misconduct charge, the Step I grievance response provides,

> Your grievance is being returned to you without processing for reason that the issue(s) contained in the grievance are non-grievable per policy. Per PD-03.02.130[,] decisions made by a Hearing Officer on minor and major misconducts . . . and issues directly related to the hearing process are nongrievable. Your avenue of recourse is through the rehearing appeal process not through the grievance process. Grievance rejected at first step.

(Compl. at 15.) On September 14, 2012, Ward appealed to Step II. (Pl.'s Resp. to Defs.' Mot. Summ. J. at 17.) Ward explained that his grievance was "not regarding a minor or major misconduct" and that the reason for the grievance was that Luckey had "attempt[ed] to penalize (harm)" him by writing a "false document." (*Id.*) Nonetheless, the JCS Warden, in responding to the Step II grievance, provided that "[t]he Step I grievance was properly rejected at Step I." (*Id.* at 18.) On November 5, 2012, this response was returned to Ward. (*Id.* at 17.) Sometime thereafter, Ward then filed a Step III grievance. (*Id.*) (It is unclear, however, whether Ward filed the Step III grievance properly: it appears that he sent the grievance to the Office of Legislative Corrections Ombudsman

---

*also Johnson v. Jones*, 340 F.3d 624, 628 (8th Cir. 2003) ("We also recognize the holdings of many of our sister circuits that permitting exhaustion pendente lite undermines the objectives of section 1997e(a) and that the language of section 1997e(a) clearly contemplates exhaustion prior to the commencement of the action as an indispensable requirement, thus requiring an outright dismissal of such actions rather than issuing continuances so that exhaustion may occur.").

and this may explain why the grievance does not appear on the Database Report. (*See* Pl.'s Resp. to Def.'s Mot. Summ. J. at 4, 8, 19  (Pg ID 134, 138, 149).))

This procedural history does not demonstrate that Ward properly exhausted JCS 0891 before bringing this suit. In fact, it shows just the opposite. This lawsuit was filed in October 2012 when Ward executed his complaint (*see* Compl. at Pg ID 4), or, at the absolute latest, on November 1, 2012, when the Clerks' Office docketed it, *see Ward v. Luckey*, No. 2:12-14875 (E.D. Mich. filed Nov. 1, 2012) (civil docket sheet), *available at* http://www.pacer.gov/. This means that Ward, who (at the earliest) filed his Step III grievance on November 5, 2012, could not possibly have exhausted JCS 0891 before bringing this lawsuit. And, as JCS 0891 is the grievance that Ward submits exhausted the claims in this suit, no reasonable jury could find that those claims have been properly exhausted. *See Freeman*, 196 F.3d at 645; *Harbin-Bey*, 420 F.3d at 580; *Johnson*, 340 F.3d at 628. This would seem to be the end of the summary-judgment inquiry.

One additional point needs to be addressed, however. JCS did not provide Ward with a timely response to his Step II appeal. Specifically, Ward filed his Step II grievance on September 14, 2012, and was not given a response until November 5: a delay well over the "15 business day[]" response time specified by MDOC's grievance policy directive. (Pl.'s Resp. to Defs.' Mot. Summ. J., Ex. E, MDOC Policy Directive 03.02.130 ¶ BB (2007).) Relying on *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004), and cases cited therein, two decisions from this district, although possibly in dicta, have reasoned that when the prison fails to timely respond to a properly filed grievance, the grievance should be deemed exhausted. *Scott v. Western*, No. 10-11934, 2011 WL 4387523, at *5 (E.D. Mich. Aug. 26, 2011), *report and recommendation adopted*, 2011 WL 4390001 (E.D. Mich. Sept. 21, 2011); *Sims v. Piper*, No. 07-14380, 2008 WL 3318746, at *5 (E.D.

8

Mich. Aug. 8, 2008).

In *Boyd*, one of the plaintiffs pled that he properly submitted a grievance but never received any response. 380 F.3d at 995. The Sixth Circuit, relying on decisions from other courts of appeal, reasoned that the prison's failure to respond was a valid basis for deeming the grievance exhausted:

> [S]everal circuits have held that the exhaustion requirement is satisfied where prison officials fail to timely respond to an inmate's written grievance. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[W]e agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable[.]"); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) ("We join the Eighth and Fifth circuits on this issue because we refuse to interpret the PLRA 'so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.' "); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) ("[O]nce [the prison] failed to respond to [the prisoner's written grievance], no further administrative proceedings were 'available' to him."); *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired."). Following the lead of the four other circuits that have considered this issue, *we conclude that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance*.

380 F.3d at 996 (emphasis added). Admittedly, as *Sims* states, the emphasized language is worded categorically: "The language of *Boyd* and [*Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 234 (6th Cir. 2006)], as well as the cases from other circuits cited [in *Boyd*], is categorical, and controls notwithstanding the prisoner's discretionary ability to administratively appeal in the absence of a response." 2008 WL 3318746, at *5 n.7.

But context still matters. Critically, in *Boyd*, the plaintiff had no means of proceeding with the grievance process absent an initial response from the prison. In other words, although Boyd had the burden of exhausting those "administrative remedies as [were] available," 42 U.S.C. § 1997e(a),

9

no further administrative remedies were "available" to him until the prison responded. The *Boyd* court explained exactly this in distinguishing a case relied upon the lower court:

> The district court also cited *Jorss v. Vanknocker*, No. C97-3719CRB (PR), 2001 WL 823771, at *2 (N.D. Cal. July 19, 2001) (unpublished), for the proposition that the "failure to receive [a] response to [a] grievance [is] no excuse for not completing the process." But in *Jorss*, unlike the present case, the prisoner received no response to his grievance submitted pursuant to the prison's preliminary, informal grievance procedure—the approximate equivalent of . . . [the] informal procedure for resolving complaints without the need to file a formal grievance [available to Boyd]. The district court in *Jorss* noted that "Plaintiff was not foreclosed from proceeding with the prison appeal process and exhausting available administrative remedies because he did not receive a response to his informal appeal." 2001 WL 823771, at *2. *Boyd, in contrast, was required to wait for a grievance officer to make a decision regarding his formal grievance before he could appeal to the warden*.

*Id.* (emphasis added).

The situation Ward confronted was different. In particular, in drafting Policy Directive 03.02.130, Michigan's Department of Correction foresaw that a warden might not timely respond to a Step II grievance and, therefore, provided grievants with recourse: "A grievant may file a Step III grievance if s/he is dissatisfied with the Step II response *or does not receive a timely response*." (MDOC Policy Directive 03.02.130 ¶ FF (emphasis added).) Thus, unlike the prisoner-plaintiff in *Boyd*, Ward was not precluded from continuing with the grievance process until he received a Step II response. In this Court's view, this material distinction precludes the blanket application of *Boyd* as suggested by *Sims*. *See Malick v. Campbell*, No. 3:06CVP156H, 2008 WL 314383, at *3 (W.D. Ky. Feb. 4, 2008) ("The Court is well aware of the Sixth Circuit's holding in [*Boyd*], that 'administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance.' The grievance process in *Boyd*, however, did not allow the prisoner to proceed if

he received no answer. . . . Such is not the case here, where there is a specific provision that allows an inmate to move forward despite inaction by a corrections official." (internal citations omitted)); *Dowd v. Smoot*, No. 1:09-422, 2011 WL 7394670, at *4 (S.D. Ohio Sept. 14, 2011) ("In *Boyd*, the Sixth Circuit found that the plaintiff had exhausted his administrative remedies where prison officials totally failed to respond to the grievance and petitioner was foreclosed from proceeding with the prison appeal process and exhausting available remedies." (internal quotation marks omitted)), *report and recommendation adopted*, 2012 WL 524458 (S.D. Ohio Feb. 16, 2012); *cf. Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (providing that "proper exhaustion of administrative remedies" includes "using *all steps* that the agency holds out" (emphasis added, internal quotation marks omitted)). Indeed, the Court in *Boyd* cited *Jernigan* and, in turn, the *Jernigan* Court explained:

> While we agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable, *see Lewis v. Washington*, 300 F.3d 829, 831-32 (7th Cir. 2002); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001); *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998), that is not what happened here. First, Mr. Jernigan was given ten days to cure the deficiency in question which no doubt would have involved informing prison officials of the lost or misfiled grievance. *Second, the grievance policy contains time limits on responses, and also provides that if an inmate does not receive a response from the warden within thirty days after submission of the grievance, the inmate may send the grievance with evidence of its prior submission to an administrative review authority*.

304 F.3d at 1032-33 (emphasis added).

In short, the Court does not believe that *Boyd* requires a finding that JCS 0891 must be deemed exhausted because the JCS warden did not respond to the grievance within the time permitted by MDOC's grievance policy directive; that same policy directive made clear to Ward

11

what he should do if that happened: appeal without continuing to wait for a response. The concern of the courts in the *Boyd* cases is simply not present here. *Cf. Lewis*, 300 F.3d at 833 ("We join the Eighth and Fifth circuits on this issue because we refuse to interpret the PLRA 'so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.'").[3]

And Ward in fact continued with the grievance process. The undisputed record makes clear, however, that he simply did not complete it prior to bringing this lawsuit. As such, Luckey is entitled to summary judgment on the issue of exhaustion.

## IV.

For reasons set forth above, this Court RECOMMENDS that "Defendant Luckey's Motion for Dismissal, or in the Alternative, for Summary Judgment" (Dkt. 16) be GRANTED and that Ward's complaint be DISMISSED WITHOUT PREJUDICE. This Court further RECOMMENDS that, if this report and recommendation is adopted, the following three motions be DENIED AS MOOT: "Affidavit/Declaration and Plaintiff['s] Motion for Cross-Move for Summary Judgment"

---

[3]And the facts of the cases cited in *Boyd* are not akin to the factual situation presented here. In *Powe*, the Fifth Circuit noted that the prisoner had available to him only a two-step grievance process, that the prisoner had filed the second-step grievance, and the prison had failed to respond. 177 F.3d at 393. Moreover, *Powe* got its rule from *Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998), and the record underlying that decision suggested that there was no "grievance procedure available . . . after the time set for a step-three grievance response," *id.* at 295. Similarly, the Eighth Circuit in *Foulk* noted that the evidence suggested that the prison's "failure to respond to [the prisoner's] [informal resolution request] precluded him from filing a grievance." 262 F.3d at 689. The Seventh Circuit in *Lewis* relied on Eighth and Fifth Circuit case law, including *Underwood*, *Powe*, and *Foulk*. *See* 300 F.3d at 833. Moreover, in *Lewis*, the court reached the timeliness issue despite that the prison in fact responded to the grievance that gave rise to the suit. *Id.*

As for the *Sims* court's reliance on *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 234 (6th Cir. 2006), that case dealt with exhaustion in the context of habeas, and, moreover, the Sixth Circuit's focus was on the documentary evidence that the prisoner needed to include to demonstrate exhaustion.

(Dkt. 18); "Plaintiff's Motion to Amend Retaliation Complaint Rule 15(a)" (Dkt. 19); and "Plaintiff[']s Motion to Amend or Supplement[] Complain[t] [a]nd Add New Parties Fed.R. Civil P. 15(a)" (Dkt. 22).

## V.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                                                          s/Laurie J. Michelson  
                                                                          LAURIE J. MICHELSON  
                                                                          UNITED STATES MAGISTRATE JUDGE

Dated: September 5, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 5, 2013.

                                       s/Jane Johnson
                                       Deputy Clerk